**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**JAMERIOUS ARCHIE**                                                                             **PLAINTIFF**

**V.**                                                               **NO. 3:24-CV-85-DMB-RP**

**HUT MEMPHIS LLC and**
**DUSTIN HARRIS**                                                      **DEFENDANTS**

**OPINION AND ORDER**

Alleging that Dustin Harris called him a racial slur when delivering pizza to his home, Jamerious Archie sued Hut Memphis LLC, Harris' employer, and Harris asserting claims for negligent hiring and retention, respondeat superior, and intentional infliction of emotional distress. The defendants move for summary judgment on all Archie's claims. For the reasons explained below, summary judgment will be granted.

**I**
**Procedural History**

On February 20, 2024, Jamerious Archie filed a complaint in the Circuit Court of Lafayette County, Mississippi, against Pizza Hut of America, LLC, claiming a Pizza Hut delivery driver addressed him with a racial slur while delivering pizza at his home. Doc. #2. By agreement of the parties, Hut Memphis LLC was substituted as the defendant on April 3, 2024. Doc. #1-3. Two days later, Hut Memphis removed the case to the United States District Court for the Northern District of Mississippi, asserting diversity jurisdiction. Doc. #1.

On June 4, 2024, Archie moved to amend his complaint "to add additional Defendant 'Dustin Harris', who has been identified as the delivery driver and employee that is the subject matter of this action." Doc. #15 at PageID 96. With leave of the Court, Archie filed an amended complaint on June 17, 2024, against Hut Memphis and Harris. Docs. #18, #19.

On November 26, 2024, the defendants moved for summary judgment on all Archie's claims. Doc. #42. Archie responded in opposition on December 12, 2024, and the defendants replied on December 17, 2024. Docs. #47, #48.

On February 4, 2025, the defendants filed a motion in limine seeking to exclude from trial any reference or testimony to Harris' prior conviction and related civil lawsuit, "the KKK and Mississippi's history of racism," and "any purported treatment [Archie] claims to have received as a result of his interaction with Harris or any of the expenses associated with such treatment." Doc. #53 at PageID 270, 273. Archie responded in opposition to the motion in limine on February 12, 2025, and the defendants replied on February 18, 2025. Docs. #53, #57.

Pursuant to notice, the Court heard oral argument on the summary judgment motion on April 8, 2025. Doc. #67. At the conclusion of the hearing, the Court took the motion under advisement.[1] Doc. #67.

## II
## Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Nall v. BNSF Railway Co.*, 917 F.3d 335, 340 (5th Cir. 2019). In reviewing summary judgment evidence, a court "must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence." *Id*. A party

---

[1] The Court set an April 11 deadline for the parties to submit any additional relevant authority. Doc. #67. On April 11, only Archie submitted additional authority.

opposing a summary judgment motion "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 "mandates the entry of summary judgment … against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III
## Relevant Factual Background

On or around June 25, 2023, Jamerious Archie's wife Olivia placed an order for pizza delivery from the Pizza Hut in Oxford, Mississippi. Doc. #42-2 at 18–21. When Dustin Harris, the pizza delivery driver, arrived to deliver the pizza, Archie opened the door. Doc. #42-1 at 40. According to Archie, who is black,[2] Harris introduced himself as the Pizza Hut delivery driver, and after handing the pizzas to Archie, said, "Let me just get that signature, if you don't mind," ending the statement with "a racial slur, the 'N' word." Doc. #42-2 at 23; Doc. #42-1 at 41. According to Harris, who is white, "[he] did not say the 'N' word to Mr. Archie." Doc. #42-1 at 65.

The video of the encounter captured on Archie's Ring doorbell cam, which the defendants made an exhibit to their summary judgment motion, shows Harris knocking on Archie's door; introducing himself as "Pizza Hut;" handing the pizza to Archie saying, "there you go, appreciate you;" then saying, "let me just grab a signature if you don't mind," followed by a word which, due to the quality of the video's audio, is difficult to tell was or was not a racial slur. Doc. #42-3.

---

[2] Archie's wife Olivia is white. Doc. #42-1 at 41.

3

IV
**Analysis**

In the amended complaint, Archie asserts against Hut Memphis claims for negligent hiring and retention, and respondeat superior; and against Harris, a claim for intentional infliction of emotional distress. Doc. #19 at 112–13. The defendants submit summary judgment is warranted because Archie's (1) "claims of negligent hiring and retention … are not supported by any proof in the record;" (2) "claim of respondeat superior … is not a viable claim in Mississippi;" and (3) "claim of intentional infliction of emotional distress … is not supported by the facts of the case or relevant case law." Doc. #42 at PageID 162.

**A. Negligent Hiring and Retention**

The defendants argue that "there is no evidence that Harris has ever said the N-word or other racial slurs (either before or after he was hired) and there is no evidence that Harris has ever said the word to a customer (or otherwise used the word in general) during his time with [it];" and that "[w]ithout proof of Harris engaging in the misconduct he has been accused of engaging in by [Archie], there simply can be no claim for negligent hiring or retention." Doc. #43 at PageID 209.

Archie counters that his "claims are rooted in genuine material fact questions, rather than legal conclusions that should be heard by a jury" and "[the] historical term must be viewed for contextual meaning based on 'conduct' of the person (i.e. Mr. Harris, a southern Caucasian male)." Doc. #46 at PageID 236.

In reply, the defendants submit that Archie fails to "offer some evidence that Hunt Memphis LLC … knew that Harris had a propensity for using racial slurs before it hired him or became aware of such a propensity during his tenure at the company and nevertheless kept him in its employ," "most likely because there is no evidence in the record to support the contention that

4

Harris was unfit to be hired or unfit to be retained," and as such, summary judgment is warranted on Archie's negligent hiring and retention claim. Doc. #48 at PageID 256–57.

Under Mississippi law,[3] a claim for negligent hiring requires the elements "of duty, breach of duty, causation and damage." *Keen v. Miller Env't Grp., Inc.*, 702 F.3d 239, 244 (5th Cir. 2012) (quoting *Roman Cath. Diocese of Jackson v. Morrison*, 905 So. 2d 1213, 1229 (Miss. 2005)); *see Enter. Leasing Co.-S. Cent., Inc. v. Bardin*, 8 So. 3d 866, 868 (Miss. 2009) (plaintiff must prove existence of duty owed by employer to prevail on negligent hiring claim). The plaintiff also must demonstrate the employer "had either actual or constructive knowledge of an employee's incompetence or unfitness before the employer will become liable for the negligent hiring or retention of an employee." *Parmenter v. J & B Enters., Inc.*, 99 So. 3d 207, 217 (Miss. Ct. App. 2012).

While Archie alleges in his amended complaint that Hut Memphis "had or should have had either actual or constructive knowledge of [Harris'] incompetence or unfitness" and that Hut Memphis "negligently hired Defendant Harris whom [it] know [sic] or should have known was a person of discriminatory and/or harassing propensities," Doc. #19 at PageID 112, Archie fails to provide evidence of any facts indicating Hut Memphis employed Harris with knowledge of his purported propensity for such inappropriate conduct, much less evidence of any facts that would create a duty owed by Hut Memphis to him in that respect. *See Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) ("A non-movant will not avoid summary judgment by presenting speculation, improbable inferences, or unsubstantiated assertions.") (internal quotation marks omitted). The defendants point out (and Archie does not dispute) that Archie did not depose the

---

[3] Because this case was removed to this Court based on diversity jurisdiction, the substantive law of Mississippi applies. *See Wisznia Co., Inc. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014) ("A federal court sitting in diversity applies the substantive law of the forum state.").

5

persons at Hut Memphis responsible for hiring to determine whether any of them were aware of any alleged propensity of Harris for such conduct. Doc. #43 at PageID 209. In the absence of evidence of such knowledge by Hut Memphis or authority creating a duty based on the factual circumstances here, summary judgment is warranted on Archie's negligent hiring and retention claim. *See Ates v. B & D Contracting, Inc.*, 487 Fed. App'x 201, 204 (5th Cir. 2012) ("To support negligent hiring or retention claims, a plaintiff must show that the employer was on notice that the employee at issue constituted a risk of harm to those it owed a duty. Because the Ateses have provided no such evidence, summary judgment on these issues was appropriate.") (citations omitted).

### B. Respondeat Superior

Citing *Epps v. Hazlehurst City School District*, No. 3:17cv918, 2018 WL 11152179 (S.D. Miss. Nov. 2, 2018), the defendants argue that "[b]ecause Count II of the Amended Complaint alleges respondeat superior which is, in fact, not a valid claim or an independent cause of action but instead merely a theory of liability, summary judgment should be granted." Doc. #43 at PageID 210 (internal quotation marks omitted). Archie responds that "Harris was acting within the scope of his employment and engaging in an act that furthered his employer (Hut Memphis, LLC) [sic] interest, when he delivered to [his] residence. Therefore, [he] has asserted a valid and viable claim under respondeat superior." Doc. #46 at PageID 237. In its reply, the defendants reiterate that "there is no viable claim for 'respondeat superior,' standing alone, that [Archie] can pursue." Doc. #48 at PageID 257.

While it does not appear to have been expressly addressed by the Fifth Circuit, district courts in this circuit have held that respondeat superior alone is not a cause of action. *See, e.g., Epps*, 2018 WL 11152179, at *3 ("The parties agree that respondeat superior is merely a theory of

6

liability, by which an employer can be found liable for the conduct of its employee; it is not an independent cause of action."); *Kenneally v. Gulfside Supply, Inc.*, No. 10-CA-289, 2010 WL 3220672, at *2 (W.D. Tex. Aug. 13, 2010) ("Defendant moves to dismiss this claim arguing that respondeat superior is not a cause of action. … Plaintiff's Response implicitly concedes that Defendant is correct, and respondeat superior is not a cause of action.") (citation omitted); *Fuller v. Werner Enters., Inc.*, No. 3:16-CV-2958, 2018 WL 3548886, at *2 (N.D. Tex. July 24, 2018) ("Plaintiff alleges only simple negligence and Werner has stipulated that Hittner was acting within the course and scope of his employment at the time of the Accident. Thus, under the doctrine of respondeat superior, Werner assumes liability for any negligence on the part of Hittner that proximately caused the Accident.") (citations and emphasis omitted). And Archie cites no authority applying Mississippi law to suggest otherwise. But even if respondeat superior was recognized as an independent cause of action, Archie's claim would still fail under Mississippi law.

In Mississippi, "[u]nder the doctrine of respondeat superior, the employer and employee are jointly and severally liable for injury caused by the employee's negligence." *Sykes v. Home Health Care Affiliates, Inc.*, 125 So. 2d 107, 109 (Miss. Ct. App. 2013). The plaintiff may sue either the employer or the employee, or both. *Id.* So before Archie can claim Hut Memphis is liable for Harris' conduct under a respondeat superior theory, Archie must establish some basis for liability against Harris, based on negligence or some other cause of action. *See Moore v. Wal-Mart Stores, Inc.*, No. 1:19CV66, 2019 WL 4934950, at *1 (N.D. Miss. Oct. 7, 2019). But Archie does not do so. The only claim in the amended complaint against Harris is for intentional infliction of emotional distress; however, as discussed below, Archie fails to prove extreme and outrageous

7

conduct by Harris. Consequently, Archie has not shown Hut Memphis is liable for Harris' conduct based on respondeat superior and summary judgment is warranted.

### C. Intentional Infliction of Emotional Distress

The defendants argue that Archie "has offered no proof that Harris called him a n**** other than what he purports to hear on the Ring doorbell camera" and that even if "Harris did call [Archie] a racial slur in the manner alleged in the Complaint, [Archie] has failed to state sufficient facts to support an IIED claim [because] the single use of that racial epithet is insufficient under Mississippi law to support [Archie's] IIED claim."[4] Doc. #43 at PageID 213 (citations omitted). The defendants also argue that "[i]f Harris called [Archie] a n****, which is disputed, his conduct would certainly qualify as insulting, derogatory, insensitive, and inappropriate, but [his] single use … does not, on its own, give rise to liability for him or [it] on [Archie's] IIED claim given the extremely high burden the plaintiff carries on that charge." *Id.* at 213–14. In support of its arguments, the defendants rely on the out-of-district state court opinions in *Dawson v. Zayre Department Stores*, 499 A.2d 648 (Pa. Super. Ct. 1985); *Irving v. J.L. Marsh, Inc.*, 360 N.E.2d 983 (Ill. App. Ct. 1977); *Bradshaw v. Swagerty*, 563 P.2d 511 (Kan. Ct. App. 1977); and *Bongam v. Action Toyota, Inc.*, 14 Fed. App'x 275 (4th Cir. 2001). Doc. #42 at PageID 211-12.

Relying on *Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1 (Miss. 2007), Archie responds that "Harris deliberately humiliated, invoked fear/mental unrest, and discouraged [him] at his residence by referring to him as "N****r" as he delivered pizza to [his] residence;" and that "[n]one of the law provided by Defendants address scenarios similar to the instant matter, where

---

[4] To the extent the defendants contend "[t]here was never a physical confrontation between Harris and [Archie]" and "Harris did not threaten [Archie], [and] did not hit or otherwise make physical contact with [Archie]," Doc. #43 at PageID 213, under Mississippi law there is no requirement a plaintiff prove a physical injury to prevail on an intentional infliction of emotional distress claim. *Bowers v. Campbell*, No. 00-60317, 2001 WL 274741, at *4 (5th Cir. Feb. 21, 2001).

an employee of a business commits a willful and wanton act while at a customer/patron's residence [and that] [i]t is unjust to state that Plaintiff or any other similarly situated individual should be accustomed or more tolerable of insults in rough-edged society." Doc. #46 at PageID 238–39. Archie also contends that Harris' "conduct and words … fit the outrageous conduct standard because 1) this not an expected and/or anticipated occurrence when engaging in a home delivery; 2) it was a public humiliation; and 3) emotional distress from such a shaming, coupled with the fact that Mr. Harris has direct knowledge of [his] residence is foreseeable." Doc. #46 at PageID 238.

The defendants reply that Archie "appears to suggest that because he claims to have suffered emotional distress after being called a 'n****' by Harris, he satisfies the criteria necessary to proceed to trial on his IIED claim." Doc. #48 at PageID 257. The defendants maintain their position that "a single use of a racial epithet does not, on its own, give rise to liability for [Harris] or [Hut Memphis] on [Archie's] IIED claim." *Id*. at PageID 259.

To survive summary judgment on his intentional infliction of emotional distress claim, Archie must show Harris' conduct was "wanton and wilful … such that it would evoke outrage or revulsion." *Hatley v. Hilton Hotel Corp.*, 308 F.3d 473, 476 (Miss. 2002) (alteration omitted) (quoting *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995)). "A Mississippi federal court defined the necessary severity as acts so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001)) (internal quotation marks omitted).

Though at his deposition Archie testified that after his encounter with Harris, he began seeing a counselor and developed concerns about the safety of his family,[5] the Fifth Circuit has made clear that generally the single use of racial epithets and abusive language do not rise to the level of outrageous conduct necessary to prevail on an intentional infliction of emotional distress claim. *See Walker v. Thompson*, 214 F.3d 615, 628 (5th Cir. 2000) ("Insults, indignities, threats, annoyances, or petty oppressions, without more, do not rise to the level of intentional infliction of emotional distress."); *id.* ("[A]lthough the appellee's [racially harassing remarks toward] the appellants may have been illegal …, it does not rise to the level of extreme and outrageous conduct."); *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993) ("The only conduct alleged to have been outrageous and extreme is that a supervisor referred to Ugalde over a period of time as a "Mexican" and as a "wetback." Although we condemn this conduct, we simply cannot say that it rises to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress."); *see also Grant v. UOP, Inc.*, 972 F. Supp. 1042, 1053 (W.D. La. 1996) (use of "nigger" three times in plaintiff's presence does not amount to extreme and outrageous conduct). So while the use of racial epithets have been and remain seriously offensive, the conduct Archie alleges by Harris under the circumstances here does not rise to the extreme and outrageous level. Summary judgment is warranted on Archie's intentional infliction of emotional distress claim.[6]

---

[5] Doc. #42-2 at PageID 38, 40.

[6] The additional authority Archie submitted after the oral argument hearing to support his position that the single utterance of a racial slur is sufficient to support a claim for intentional infliction of emotional distress does not alter the Court's ruling on the claim. In each of those opinions—one issued by the Fifth Circuit, one issued by the Southern District of Florida, and two issued by state courts in other jurisdictions—the issue involved a hostile work environment suit by an employee against employers, other elements of an emotional distress claim, the availability of damages based on a theory of intentional gross insult, and/or holdings not binding on this Court.

# V
# Conclusion

The defendants' motion for summary judgment [42] is **GRANTED**. The defendants' motion in limine [53] is **DENIED as moot**.

**SO ORDERED**, this 23rd day of April, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**